United States Court of Appeals,

Eleventh Circuit.

No. 94-8197.

UNITED STATES of America, Plaintiff-Appellee,

v.

Dorcas Abike ADUWO, aka Joyce Omolakake Taiwo, aka Joyce Tawuo, aka Joyce Labeke Atilade, Defendant-Appellant.

Sept. 19, 1995.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:93-CR-47), J. Owen Forrester, Judge.

Before ANDERSON and BIRCH, Circuit Judges, and JOHNSON, Senior Circuit Judge.

ANDERSON, Circuit Judge:

Dorcas Abike Aduwo pled guilty to two counts of making false statements in the acquisition of firearms, 18 U.S.C. § 922(a)(6), and one count of possession of firearms by a convicted felon, 18 U.S.C. §§ 922(g) and 924(a), in connection with two purchases of 9mm handguns. Because Aduwo later participated in an attempted armed robbery in which one of these guns was used, the sentencing judge applied the cross-reference provision of U.S.S.G. § 2K2.1 (Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition), § 2K2.1(c) (Nov.1990), and sentenced Aduwo under U.S.S.G. § 2B3.1 (Robbery) (Nov. 1990).[1] Aduwo's appeal raises

---

[1]The district court applied the sentencing guidelines effective November 1, 1990. Generally a sentencing court should apply the guidelines in effect at the time of sentencing. 18 U.S.C. § 3553(a)(4); *United States v. Lance,* 23 F.3d 343, 344 (11th Cir.1994). Thus, under the general rule, the November 1993 guidelines would have been applicable because Aduwo was sentenced in February of 1994. However if, under the guidelines in effect at sentencing, application of a post-offense amendment to the guidelines would substantially disadvantage the defendant, the sentencing court should apply the guidelines in effect at the

only one issue; Aduwo argues that the district court incorrectly applied the § 2K2.1(c) cross-reference provision because Aduwo was not in possession of a firearm during the attempted armed robbery for the purpose of § 2K2.1(c). We affirm.

## I. FACTS

At the behest of her boyfriend, Romeo Anthony Brown, Aduwo made two purchases of 9mm handguns. On August 11, 1991, Aduwo purchased five Glock 9mm handguns and five Taurus 9mm handguns. Several days later, on August 16, Aduwo purchased nine more Glock 9mm handguns. At each handgun purchase, Aduwo certified on ATF Form 4473, a firearms transaction record, that she had never been convicted of a felony. In fact, Aduwo had been convicted of a felony in 1989.

In January of 1992, Aduwo participated in an attempted "drug rip-off" with Brown. Brown, Aduwo, and a third conspirator negotiated a sale of five kilograms of cocaine with undercover agents. They did not intend to deliver cocaine, but instead planned to rob the buyers of $115,000 by exchanging a canvas bag containing telephone books for the money. When the undercover agents arrested them at the scene of the exchange, Brown was in possession of one of the 9mm Glocks purchased by Aduwo on August 16, 1991, but Aduwo had no weapon. Aduwo was indicted and prosecuted for this crime in Georgia state court; in that

_____

time of the offense instead. *Id.* The November 1990 guidelines were in effect when Aduwo made the illegal firearm purchases. Because the parties do not object to the district court's application of the November 1990 guidelines, we assume without deciding that this case is governed by the exception rather than the general rule.

proceeding, she pled guilty to criminal attempt to commit armed robbery and was sentenced to four years imprisonment.

In this proceeding, Aduwo was charged with two counts of making false statements to acquire firearms, 18 U.S.C. § 922(a)(6), and two counts of possession of firearms by a convicted felon, 18 U.S.C. §§ 922(g) and 924(a). Aduwo pled guilty to both false statement counts and one count of possession of a firearm by a convicted felon. Finding that possession of one of the firearms in the subsequent attempted armed robbery could be imputed to Aduwo, the court applied U.S.S.G. § 2K2.1(c), and thus calculated Aduwo's offense level based upon the robbery guideline, U.S.S.G. § 2B3.1. Aduwo argues that the district court's application of § 2K2.1(c), and thus § 2B3.1, was in error because she did not possess a firearm in connection with the attempted armed robbery.

## II. DISCUSSION

Whether, under these facts, possession of a firearm can be imputed to Aduwo for the purpose of § 2K2.1(c) is a question of law which we review *de novo*. *United States v. Huppert,* 917 F.2d 507, 510 (11th Cir.1990).

United States Sentencing Guidelines § 2K2.1 addresses the unlawful receipt, possession or transportation of firearms. U.S.S.G. § 2K2.1 (Nov. 1990). Subsections (a) and (b) provide the general rules for calculating an offense level for such crimes. However, if the defendant used or possessed the firearm in connection with the commission or attempted commission of another offense, § 2K2.1(c) directs the sentencing judge to apply § 2X1.1 if the resulting offense level is greater than that determined

under § 2K2.1(a) and (b). Section 2X1.1 in turn directs the sentencing court to apply the guideline for the offense that the defendant committed while in possession of the firearm. § 2X1.1(a) (Nov. 1990). Thus, a defendant who merely possesses a firearm illegally will be sentenced under § 2K2.1(a) and (b), but a defendant who then uses that weapon in another crime may be given a longer sentence under the guideline applicable to the subsequent crime instead. In this way the 2K2.1 sentencing scheme permits the sentencing court to impose a sentence which reflects the magnitude of the crime. As the Tenth Circuit has observed, "[I]t [is] obvious that the culpability—and the resultant punishment—of a person who passively possesses a gun is different than the person who possesses that same gun but also uses is it [in another crime]." *United States v. Willis,* 925 F.2d 359, 361 (10th Cir.1991).

The district court determined that § 2K1.1 was applicable to Aduwo's illegal firearm purchases. Because the court found that Aduwo "possessed" one of the illegally purchased firearms in connection with the January, 1992, attempted armed robbery, the court applied § 2X1.1(a) which in turn referred the court to § 2B3.1, the robbery guideline. U.S.S.G. § 2B3.1 (Nov. 1990). Aduwo was sentenced based upon the resulting offense level of 23[2] because

_____

[2]The district court calculated an offense level of 23 under the robbery guideline. U.S.S.G. § 2B3.1 (Nov. 1990). Aduwo's base offense level was 20. § 2B3.1(a). The base offense level was then increased by 3 points because a dangerous weapon was used in the attempted armed robbery, § 2B3.1(b)(2)(C), and by another 2 points because the crime involved more than $50,000. § 2B3.1(b)(6)(C). The court then decreased the offense level by 2 for acceptance of responsibility. U.S.S.G. § 3E1.1(a) (Nov. 1990).

that offense level was greater than the offense level that would have resulted under § 2K2.1(a) and (b).[3]

Aduwo argues that the district court should not have applied the § 2K2.1(c) cross-reference provision because she did not possess a firearm in connection with the attempted armed robbery. Aduwo claims that the "rip-off" plan never included the use of weapons, that she never had physical possession of a weapon during the attempted robbery, and that she did not know that a firearm was present during her participation in the crime. The government contends that Brown's possession of the Glock during the crime may be imputed to Aduwo as Brown's co-conspirator.

Whether possession of a firearm by a co-conspirator can be imputed to a defendant for the purposes of § 2K2.1(c) is a question of first impression in this Circuit. We have, however, concluded that a sentencing court may enhance a defendant's sentence based upon a co-conspirator's possession of a firearm in the similar context of U.S.S.G. § 2D1.1(b). *United States v. Otero,* 890 F.2d 366, 367 (11th Cir.1989); *see also United States v. Nino,* 967 F.2d 1508, 1513-15 (11th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 1432, 122 L.Ed.2d 799 (1993). Under § 2D1.1(b)(1), a defendant's narcotics trafficking sentence can be enhanced "[i]f a dangerous weapon (including a firearm) was possessed [during commission of the offense]." U.S.S.G. § 2D1.1(b)(1) (Nov. 1994). A defendant who did not physically possess a weapon during a drug

---

[3]The district court calculated an offense level of 10 under § 2K2.1(a) and (b). Aduwo's base offense level was 12 because she had a prior felony conviction. § 2K2.1(a)(2). The court then decreased Aduwo's offense level by 2 for acceptance of responsibility. § 3E1.1(a) (Nov. 1990).

conspiracy may still merit a sentence enhancement for "possession" of a dangerous weapon under § 2D1.1(b) if a co-conspirator possessed a dangerous weapon. *Otero,* 890 F.2d at 367. This follows from the basic rule that conspirators are liable for the reasonably foreseeable acts of their co-conspirators in furtherance of the conspiracy. *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); *see also* U.S.S.G. § 1B1.3(a)(1)(B) (Nov. 1994) (Relevant conduct for the purpose of determining specific offense characteristics includes "all reasonably foreseeable acts and omissions of others in furtherance of [a] jointly undertaken criminal activity."); *United States v. Martinez,* 924 F.2d 209, 210 n. 1 (11th Cir.) (noting *Otero*'s § 2D1.1(b) co-conspirator possession rule tracks *Pinkerton* and the Guidelines, which "require[ ] that the firearm possession be reasonably foreseen as a necessary or natural consequence of the unlawful agreement"), *cert. denied,* 502 U.S. 870, 112 S.Ct. 203, 116 L.Ed.2d 163 (1991). We see no reason why the *Pinkerton* rule of conspirator liability should not apply equally in the context of § 2K2.1(c).

Applying the *Pinkerton* rule to our facts, Brown's possession of the Glock during the attempted armed robbery may be imputed to Aduwo. Brown and Aduwo were co-conspirator's in a conspiracy to effect a "drug rip-off;" Aduwo, Brown, and their co-conspirator agreed to commit a robbery and, in its attempt, committed overt acts in furtherance of that crime. *See United States v. Wieschenberg,* 604 F.2d 326, 331 (5th Cir.1979) (A conspiracy is an agreement between two or more persons with an unlawful purpose, and

an overt act in furtherance of that purpose.).  Therefore, Aduwo is liable for all acts in furtherance of the "drug rip-off" which are "reasonably foresee[able] as a necessary or natural consequence of the unlawful agreement." *Pinkerton,* 328 U.S. at 648, 66 S.Ct. at 1184.

Although Aduwo claims that she had no idea that Brown would be carrying the concealed Glock,[4] Brown's possession of the weapon during the attempted robbery was both foreseeable and in furtherance of the conspiracy.  The conspirators planned to "rip off" people whom they believed were drug purchasers.  The quantity of drugs involved, five kilograms of cocaine, would indicate to the conspirators that these purchasers were not merely occasional users, but drug dealers as well.  Thus, it was reasonably foreseeable that one of the conspirators might carry a weapon as protection against the very real possibility that the purchasers would discover their deception and retaliate violently.  In fact, Aduwo pled guilty to attempted *armed* robbery in state court, thereby acknowledging that the conspirators planned to use some weapon to effect the "rip off."  Moreover, Aduwo had purchased firearms for Brown, including the particular Glock which he carried, and thus was well aware that Brown had access to such weapons.  Therefore, because Brown's possession of a concealed

---

[4]Whether Aduwo had actual knowledge of Brown's possession of the Glock is irrelevant to our inquiry.  Aduwo's alleged lack of knowledge notwithstanding, she is liable for Brown's possession of the Glock if such possession was foreseeable and in furtherance of the conspiracy. *See United States v. Martinez,* 924 F.2d 209, 210 (11th Cir.1991) (§ 2D1.1 enhancement sustained despite defendant's alleged lack of knowledge of co-conspirator's firearm possession because possession reasonably foreseeable).

firearm during the attempted robbery was foreseeable and in furtherance of the "drug rip-off," Brown's possession of the Glock may be imputed to Aduwo.

### III. CONCLUSION[5]

The district court did not err in determining that Aduwo possessed one of the 9mm firearms in connection with the commission of the subsequent attempted armed robbery for the purpose of the § 2K2.1(c) cross-reference provision.  Therefore, Aduwo's sentence is

AFFIRMED.

---

[5]We note that our conclusion is consistent with the result in *United States v. Gonzales,* 996 F.2d 88 (5th Cir.1993).